IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

JACQUELINE RENE BARTOSH,

                Plaintiff,

v.                                                     OPINION and ORDER

ANDREW SAUL,                                       19-cv-686-jdp
    Commissioner of the Social Security Administration,

                Defendant.

Plaintiff Jacqueline Rene Bartosh, appearing pro se, seeks judicial review of a final decision of the commissioner of the Social Security Administration finding Bartosh not disabled within the meaning of the Social Security Act. Bartosh says that she suffered from chronic Lyme disease, cognitive difficulties, and chronic diarrhea. This is the third time that Bartosh's case has come before this court: I remanded the first denial of benefits and the commissioner asked to remand the second.

In her latest appeal, Bartosh contends that the administrative law judge (ALJ) erred in several respects, including that the ALJ failed to properly evaluate how severe flare-ups of her conditions and her chronic diarrhea would cause her to miss work. Because I agree with that contention, I will remand the matter to the agency.

ANALYSIS

The latest denial of benefits covers Bartosh's claim starting on November 1, 2010, when she was 36 years old, until her eventual recovery in August 2018.[1]

---

[1] Bartosh now says that she seeks benefits from an onset date in May 2007, which was the start date for her original claim. But she amended the date to November 1, 2010, at her first hearing,

Bartosh says that she suffered from chronic Lyme disease and cognitive difficulties arising either from the Lyme disease or from side effects of her medication. This is the third time that Bartosh's case has been before this court. In case No. 14-cv-688-jdp, I remanded the first denial of benefits after concluding that the ALJ did not draw an accurate and logical bridge from the evidence to the residual functional capacity (RFC) of light work: the ALJ didn't squarely address Bartosh's testimony that her symptoms waxed and waned, causing debilitating flare-ups that kept her from working full-time, and the ALJ didn't clearly explain how much weight she assigned to the opinions of Bartosh's treating physician. *Bartosh v. Colvin*, No. 14-cv-688-jdp, 2015 WL 5123759, at *1 (W.D. Wis. Sept. 1, 2015). I directed the ALJ to reevaluate listing 14.00, "Immune System Disorders," given Bartosh's reports of severe fatigue, fever, malaise, and musculoskeletal pain, and I stated that "it would also be helpful for the ALJ to obtain a more particularized assessment of how Bartosh's specific limitations are capable of being accommodated by the various jobs that the [vocational expert] identified." *Id.* at *1–2.

Bartosh was given a second hearing, this one before ALJ Virginia Kuhn, who again denied Bartosh's application for benefits. Bartosh again sought relief in this court. But before briefing was completed, the commissioner asked for remand of the case, which I granted. *Bartosh v. Colvin*, No. 18-cv-171-jdp, Dkt. 13 (W.D. Wis. Aug. 20, 2018). Upon remand, the Appeals Counsel directed the ALJ to more fully address medical opinions about Bartosh's ability to sustain concentration, persistence, and pace, occasions when Bartosh would

---

neither of this court's earlier remands have been on the grounds that the ALJ incorrectly used the November 1, 2010 date for the start date, and in her current appeal she does not raise an argument supporting the earlier date. So I'll keep November 1, 2010, as the start date here.

experience moderate to marked limitations in understating, remembering, and following instructions and tolerating stress and pressures found in entry-level workplaces, and Bartosh's social limitations. R. 1043.[2] The Appeals Counsel also directed ALJ Kuhn to more fully consider Bartosh's own testimony about the intensity and persistence of her symptoms, in particular how Bartosh's symptoms waxed and waned and how her medications caused her side effects such as diarrhea, fatigue, nausea, and confusion. R. 1044. The Appeals Council stated that ALJ Kuhn was not required to hold another hearing, and Bartosh later waived a hearing. So Kuhn's decision that is the subject of this opinion is built on the evidence adduced at Bartosh's second hearing.

In her latest review, Kuhn reached the following conclusions that are relevant to the appeal: (1) Bartosh suffered from three severe impairments—cognitive disorder, history of Lyme disease, and generalized pain disorder—and the non-severe impairment of kidney stones; (2) none of Bartosh's problems alone or together met the criteria of an impairment listed in the Social Security regulations; (3) Bartosh could do light work subject to limitations: only routine and repetitive types of tasks and instructions further defined as fixed and predictable from day to day, no climbing or tasks requiring balance, no work at unprotected heights or hazardous machinery, and ready access to a bathroom; and (4) she could not perform past relevant work (she was a teacher) but she could perform other jobs in the national economy such as bench work assembler of small products, sub assembler, and assembler of electrical accessories.

---

[2] Record citations are to the administrative record, located at Dkt. 5. The page numbering of my citations reflects the Bates numbering on that record.

Bartosh asks this court to review that decision. The scope of Bartosh's challenge is disputed. Defendant says that Bartosh "only challenges the ALJ's decision in one respect—whether Plaintiff provided sufficient evidence to show that her Lyme disease symptoms met the listing requirements of 14.09D (inflammatory arthritis) such that the ALJ erred in his step-three determination when he found that she was not presumptively disabled." Dkt. 10, at 1. This is too uncharitable a reading of Bartosh's pro se submissions. I must "'construe pro se filings liberally, and . . . address any cogent arguments [I am] able to discern.'" *Rockwell v. Saul*, 781 F. App'x 532, 537 (7th Cir. 2019) (quoting *Parker v. Four Seasons Hotels, Ltd.*, 845 F.3d 807, 811 (7th Cir. 2017)).

In her complaint, Bartosh raises nine issues, many of which are related. I've distilled them into the following:

- ALJ Kuhn incorrectly states that Bartosh had no diagnoses of Lyme disease.

- Kuhn incorrectly stated that materials Bartosh claimed to have been missing from the administrative record were indeed present in the record. Bartosh says that those materials were in the record by the time of Kuhn's latest decision.

- Kuhn didn't properly consider how the waxing and waning of Bartosh's flare-ups and the side effects of her medications would affect her ability to work a full-time job.

- Kuhn didn't properly resolve conflicts among the various medical opinions, in particular placing "great weight" on the opinion of Dr. Steiner, the impartial medical expert.

I can quickly dispense with the first two issues: Kuhn agrees that Bartosh has been diagnosed with Lyme disease and she found that Bartosh's Lyme disease was an impairment. And the dispute over certain records in the second round of administrative proceedings is irrelevant to this case, which concerns the third round.

4

That leaves Bartosh's interrelated challenges to the substance of ALJ's Kuhn's ruling: Kuhn's weighing of the various medical opinions and Kuhn's analysis of the waxing and waning of Bartosh's symptoms, both from her underlying maladies and side effects of her medication.

I must determine whether ALJ Kuhn's decision applied the correct legal standards and is supported by "substantial evidence," *Martin v. Saul*, 950 F.3d 369, 373 (7th Cir. 2020), which means that the court looks to the administrative law record and asks "whether it contains sufficient evidence to support the agency's factual determinations." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019).

Defendants are correct that Bartosh's brief-in-chief focuses on her argument that she meets listing 14.09D ("Repeated manifestations of inflammatory arthritis"), but the substance of her arguments logically applies to the residual functional capacity part of the analysis as well. As with my previous decision remanding the first ALJ decision and the Appeals Council's instructions to the ALJ following the second remand, the key issue in Bartosh's case is the waxing and waning of her symptoms—she says that she often suffered from debilitating flare-ups of her symptoms. And ALJ Kuhn's evaluations of various medical experts depends in part on how they addressed this issue.

Although ALJ Kuhn agrees that Bartosh has Lyme disease, she discounted Bartosh's own testimony about the intensity and frequency of flare-ups that Bartosh says left her in pain with flu-like symptoms, fatigue, and mental fog. Kuhn stated that Bartosh's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." The court of appeals has criticized similar boilerplate in multiple opinions, *e.g.*, *Stark v. Colvin*, 813 F.3d 684, 688 (7th Cir. 2016), but the substantive issue is whether

"the ALJ otherwise identifies information that justifies the credibility determination." *Moore v. Colvin*, 743 F.3d 1118, 1122 (7th Cir. 2014). ALJ Kuhn attempts to draw together evidence backing this conclusion, but I conclude that there isn't enough in Kuhn's opinion to "build an accurate and logical bridge" between this evidence and the ALJ's conclusions on the medical listing and RFC. *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000).

The major difficulty that Bartosh has had in supporting her case is that the bulk of her evidence about her Lyme flare-ups relies on her subjective complaints of symptoms. So an important issue is whether Bartosh has shown that she indeed suffered from severe flare-ups. A court may overturn a credibility finding only if it is "patently wrong."[3] *Pepper v. Colvin*, 712 F.3d 351, 367 (7th Cir. 2013). "[B]ut the ALJ is still required to build an accurate and logical bridge between the evidence and the result." *Castile v. Astrue*, 617 F.3d 923, 929 (7th Cir. 2010) (internal quotation omitted).

Aside from Bartosh's own testimony, the various medical opinions in her favor in this case do not rely on contemporaneous objective measurements of her physical symptoms during a flare-up. Instead they recount Bartosh's own account of how her flare-ups affected her. Kuhn in part discounts Bartosh's testimony and the medical opinions supporting her for that reason, which is not in itself improper. *Johnson v. Barnhart*, 449 F.3d 804, 805 (7th Cir. 2006) ("Applicants for disability benefits have an incentive to exaggerate their symptoms, and an administrative law judge is free to discount the applicant's testimony on the basis of the other

---

[3] The Social Security Administration states that it no longer assesses the "credibility" of an applicant's statements, but instead focuses on determining the "intensity and persistence of [the applicant's] symptoms." SSR 16-3p. But "[t]he change in wording is meant to clarify that administrative law judges aren't in the business of impeaching claimants' character; obviously administrative law judges will continue to assess the credibility of . . . assertions by applicants." *Cole v. Colvin*, 831 F.3d 411, 412 (7th Cir. 2016).

evidence in the case."); *see also Loveless v. Colvin*, 810 F.3d 502, 507 (7th Cir. 2016) ("[T]he ALJ properly discounted Dr. Cusack's medical opinion that rests entirely on the claimant's subjective complaints."). I won't remand the case for a reassessment of the medical opinions supporting Bartosh because ALJ Kuhn correctly described them as conclusory and relying on Bartosh's subjective complaints.

Nonetheless, an ALJ can't "disbelieve [an applicant's] testimony solely because it seems in excess of the 'objective' medical testimony." *Id.* The ALJ must still consider statements made by the applicant; daily activities; location, duration, and frequency of the symptoms; precipitating and aggravating factors; medications; other treatments; other measures taken for relief; and other factors concerning functional limitations. 20 C.F.R. § 404.1529(c)(2)–(3).

Some of this evidence supports Bartosh's claim: she has continuously sought out treatment for her problems, including traveling cross-country to be treated by doctors she believes to be experts in Lyme disease and taking numerous medications, even to the point that her antibiotic treatment appeared to produce another potentially disabling problem, chronic diarrhea. A plaintiff's commitment to difficult treatment is generally seen as a credibility enhancer, undermining a theory that she is malingering. *Cf. Carradine v. Barnhart*, 360 F.3d 751, 755 (7th Cir. 2004) (court consider it improbable that plaintiff would undergone invasive pain-treatment procedures "merely in order to strengthen the credibility of her complaints of pain and so increase her chances of obtaining disability benefits.").

As for Bartosh's daily activities, ALJ Kuhn's decision falls into the same trap as the previous two ALJ decisions. Kuhn lists various activities that Bartosh was engaged in— gardening, performing household chores, raising chickens, caring for her pets, and traveling. R. 972. But the court of appeals has "repeatedly warned against equating the activities of daily

7

living with those of a full-time job." *Hill v. Colvin*, 807 F.3d 862, 869 (7th Cir. 2015). This is particularly so here given Bartosh's contention that she can't necessarily do these activities during a flare-up. For instance, at the hearing, ALJ Kuhn asked Bartosh to explain how she felt on a "typical" day; Bartosh's response was, "[J]ust to clarify, I don't think I have typical days because the symptoms can flare anytime they want so there's no such thing as a typical [day] . . . . There could be a week that I'm bedridden. There could be a week where I'm feeling fine." R. 594.

One of major ways that ALJ Kuhn discounts Bartosh's testimony about her flare-ups is by saying that it is contradicted by the testimony of impartial medical expert Dr. Andrew M. Steiner, a specialist in physical medicine and rehabilitation. Because this appeal largely boils down to Kuhn's characterization of Steiner's testimony, I'll recount it here:

At Bartosh's second hearing, Steiner testified that Bartosh's various examinations did not show "joint involvement and/or neurologic involvement or cardiac involvement," which is "what we generally look for." R. 605. More recently Bartosh was found to have central nervous system hypersensitivity. *Id.* Steiner noted that "[w]e have no functional capacity testing [or] actual fatigue measurements." R. 606.

ALJ Kuhn asked Steiner whether there was a sufficient basis in the evidence to support a conclusion about whether Bartosh's impairments met or equaled a medical listing. *Id.* Steiner responded that there isn't a listing for Lyme disease, so he compared Bartosh's problems to similar immune conditions in the listings; he said that because there was no evidence of changes in functioning of organs or joints, no evidence of ongoing inflammatory reactions, and no significant ongoing fevers, no listing was warranted for Bartosh. R. 606–07. ALJ Kuhn noted that Bartosh had testified about symptoms affecting her musculoskeletal and neurological

systems and having chronic diarrhea; she asked Steiner if he had considered those problems. R. 607–08. Steiner said that he had, and that there wasn't evidence of a "pathologic abdominal (inaudible) component or condition" to support a listing and that "the same could be said for the skin and the central nervous system." R. 608. Steiner said that current examinations showed slight balance problems and hyperactive reflexes but "we don't have any actual neurologic etiology or findings . . . to go further into the listings evaluation." *Id.*

ALJ Kuhn then asked Steiner what work-related functional limitations were supported by the record, and he responded that he couldn't recommend severe limitations because "most of these reports are more subjective rather than what we can identify as pathology." *Id.* He said the record supported "at least a light exertion level," a bathroom close at hand, and restrictions from climbing or actions requiring balancing. R. 608–09. He finished by saying that he did not consider Bartosh's cognitive disorder because it wasn't in his expertise.

In her decision, ALJ Kuhn made the following statements about Steiner's testimony undermining Bartosh's testimony about her flare-ups:

> When asked if the overall medical evidence supported the claimant's alleged frequency, extent, duration, or intensity or level of limitation from the reported flares, Dr. Steiner responded in the negative.
>
> . . . .
>
> The claimant may indeed have had a degree of waxing and waning symptoms as she indicates, however, the overall evidence and the impartial medical expert's testimony do not support that this further limited her functioning as alleged for any 12-month duration on or prior to her date last insured. The medical expert was asked about the flares and symptoms, and he testified that the overall medical evidence did not support the alleged frequency, extent, duration, or intensity or level of limitation from reported flares.

R. 972–73.

9

These statements are not an accurate characterization of Steiner's testimony. The ALJ did not squarely ask Steiner about the flare-ups, much less detailed questions about the alleged frequency, extent, duration, or intensity or level of limitation caused by flare-ups. This is a problem because this case is not just about Bartosh stating that she suffered from a baseline of chronic fatigue or mental fogginess; the focus of her case is that her flare-ups caused acute problems that would keep her from being able to work often enough to hold a full-time job.

I stated in my order remanding the first ALJ decision in Bartosh's case that "Bartosh said she was laid low multiple days a month, but the ALJ assigned an RFC that portrayed Bartosh as a person with consistent, but modest limitations." *Bartosh*, 2015 WL 5123759, at *1. We are left with the same problem on this round of review. There's adequate evidence for a conclusion that Bartosh isn't disabled by her symptoms all day, every day. But ALJ Kuhn goes further to say that the overall record doesn't support Bartosh's contention that the flare-ups limited her function enough for a finding of disability. Kuhn did not build an accurate and logical bridge to this conclusion because of the flaws in her analysis of Bartosh's daily activities and her reliance of Steiner's opinion despite him not providing testimony about the waxing and waning of Bartosh's symptoms. So I will remand for the ALJ to reconsider both the medical listing and the RFC steps of the analysis, taking further expert testimony if need be on the waxing and waning issue.

There's a similar problem with Bartosh's complaints of chronic diarrhea as a side effect of her medications. Bartosh described the problem in the following way at the hearing:

> "[I]f I'm a school teacher and I say to the kids, oh, sorry kids, got to run, and I run to the bathroom, come back, and five minutes later, okay, sorry kids, got to run again, eventually the principal's going to come to me and say, wait a minute, you need to just deal with your diarrhea. Come back when you feel well."

R. 613–14.

Steiner's testimony that the record didn't show evidence of a "pathologic abdominal (inaudible) component or condition" was reason for him to say that Bartosh didn't meet a medical listing for that type of problem. But he nonetheless agreed—and ALJ Kuhn accepted—that Bartosh needed "ready access to bathroom facilities." R. 609. But the vocational expert explained that an employee would be given only so many opportunities each day to use the bathroom:

> "[I]t's my opinion a person could reasonably expect a 15 to 20-minute break in the morning, same in the afternoon and a 30 to 60-minute lunch period. . . . maybe one additional, short, short bathroom break would fall within the reasonable parameter but anything beyond that, employers in general wouldn't tolerate."

R. 620. It's unclear from the record that *access* to a bathroom is really the problem here: almost all people have access to a bathroom over lunch or on a 15-minute break. The question is whether Bartosh would be allowed to take as many bathroom breaks in a day as she needed. ALJ Kuhn doesn't say that Bartosh's claim of chronic diarrhea is incredible. Instead she arrived at an accommodation that wouldn't logically resolve the problem. So I will remand for the ALJ to address this issue further.

One final point. Bartosh requests that she be given a new ALJ on remand. Unless a claimant successfully shows bias on the part of the ALJ, courts do not have the power to direct the Social Security Administration to have a different ALJ conduct proceedings on remand. *See Sarchet v. Chater*, 78 F.3d 305, 309 (7th Cir. 1996) (citing *Ventura v. Shalala*, 55 F.3d 900, 904–05 (3d Cir. 1995)). Courts have *recommended* an ALJ's replacement, when, for instance, "[t]he tone of the administrative law judge's opinion suggests that she may have an unshakable commitment to the denial of this applicant's claim." *Id.* Bartosh has not made a showing of

11

bias, and although this will be the second remand of a decision by ALJ Kuhn in this case, the errors made here do not persuade me that the court should take the rare step of requesting that the agency replace the ALJ.

ORDER

IT IS ORDERED that the decision of defendant Andrew Saul, commissioner of Social Security, denying plaintiff Jacqueline Rene Bartosh's application for disability benefits is REVERSED and REMANDED under sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this opinion. The clerk of court is directed to enter judgment for plaintiff and close this case.

Entered September 28, 2020.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge